```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Patricia A. Rutherford,         :

        Plaintiff,              :

    v.                          :      Case No. 2:10-cv-0260

Commissioner of Social          :      JUDGE FROST
Security,                              MAGISTRATE JUDGE KEMP

        Defendant.              :
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Patricia A. Rutherford, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for a period of disability and social security disability benefits. That application was filed on October 20, 2004, and alleged that plaintiff became disabled on December 15, 1999.

After initial administrative denials of her claim, plaintiff was given a hearing before an Administrative Law Judge on October 30, 2007. In a decision dated November 9, 2007, the ALJ denied benefits. That became the Commissioner's final decision on January 26, 2010, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on June 1, 2010. Plaintiff filed her statement of specific errors on August 4, 2010. The Commissioner filed a response on August 31, 2010, and plaintiff filed a reply brief on September 17, 2010. The case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff's testimony at the administrative hearing is found at pages 156 through 181 of the record. The following is a summary of the facts to which plaintiff testified.

Plaintiff was 64 years old at the time of the hearing. She completed the eleventh grade. She had previously worked as an office helper at Buckeye Steel, a job which she left due to pain. That job could require standing up to five hours in a day, but no lifting. Before that, she had worked at a motorcycle shop dealing with tires and orders for tires.

Plaintiff's pain stems from arthritis in her left hip. The pain radiates down her leg. She now has pain in her left knee and left ankle. She also has migraine headaches twice a month. That condition is greatly helped by medication. Her only other medical condition is arthritis in her hands. Her pain does cause her to be nervous.

On a daily basis, plaintiff does household chores such as cleaning, cooking, shopping, and laundry. She also visits with friends in her home. She used to play bingo twice a week but had not done so in the three years prior to the hearing.

Plaintiff uses a cane when walking. She can walk half a block without stopping. She can sit for twenty minutes at a time before needing to stand. She can lift and carry ten pounds.

### III. The Medical Records

The medical records are found at pages 84-145 of the record. They are not extensive. They show the following.

Dr. Kistler is plaintiff's long-time treating physician. In a tele-dictation report taken on December 10, 2004, he reported that he had been seeing the plaintiff for more than 12 years and that she suffered from migraine headaches, sinusitis, tachycardia, degenerative arthritis, chronic obstructive pulmonary disease, degenerative joint disease, and stomach problems. She was taking five different medications. His report states that "[I]t appears that the patient is permanently and totally disabled."

On December 27, 2004, plaintiff was examined by Dr.

Woskobnick for purposes of a disability assessment.  Plaintiff reported to him that she had been suffering from back pain, as well as pain in her knees and hips, for several years.  She stated she had trouble walking down stairs and walking more than one block or standing for longer than 15 minutes.  On examination, she had some decreased range of motion of the left knee and of the dorsolumbar spine with stiffness and pain.  Her neurological examination was essentially normal.  The clinical diagnoses included chronic back pain most likely due to degenerative joint disease or disc disease and bilateral knee pain, worse on the left than the right.  Dr. Woskobnick believed that plaintiff could stand for one hour at a time but she needed to rest for 15 minutes on each hour and that she could do this up to eight hours a day.  She could also lift 20 pounds intermittently during the workday and could sit up to eight hours a day if she could get up to stretch for 15 minutes every two hours.  She had some restrictions on her ability to climb, balance, stoop, crouch, kneel, and crawl due to knee pain.  As long as she stayed within the weight restriction imposed, she could reach, handle, and push within normal limits.

 Dr. Hinzman review the plaintiff's records and concluded on January 13, 2005, that plaintiff could perform essentially a full range of light work activities.  He did limit her to climbing ladders, ropes, or scaffolds only occasionally, and he thought that her complaints were disproportionate to the objective medical evidence of record.

 Dr. Kistler completed a physical capacity evaluation form in May, 2005.  He indicated that plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, but that her ability to stand and walk, or to sit, during an eight hour day was limited to less than two hours total for each of these two activities.  He thought she would need to lie down once

or twice during an eight-hour workday.  He attributed these restrictions to degenerative disease of the knees and spine as well as chronic obstructive pulmonary disease.

Some additional medical records were submitted at the Appeals Council level.  However, because they were not before the Administrative Law Judge, they were not taken into account in his decision.

## IV.  The Vocational Expert's Testimony

A vocational expert, Mr, Kiger, also provided testimony during the administrative proceedings.  His testimony begins at page 181 of the record.  He described plaintiff's past work as an office helper as light and unskilled, and as packer as medium and unskilled.  Mr, Kiger was asked to assume that plaintiff had the capacity to do work as described in Exhibits 3F and 4F, the reports of Drs. Woskobnick and Hinzman.  With those restrictions, she could still do the officer helper job.  However, if she were limited as described in Exhibit 5F, which precluded standing or sitting for more than two hours a day, she could not do any of her past work.

## V.  The Administrative Law Judge's Decision

The administrative decision appears at pages 11 through 18 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured status requirements of the Social Security Act up to December 31, 2004.  The ALJ next found that plaintiff had not engaged in substantial gainful activity from her alleged onset date forward.  The only severe impairments which the ALJ found to exist were migraine headaches and degenerative disease of her dorsolumbar spine and knees.  He found no documentation of a mental impairment prior to December 31, 2004.

As far as plaintiff's limitations are concerned, the ALJ

found that plaintiff could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, could stand and walk for a total of six hours in a workday, could sit for a total of six hours in a workday, and could only occasionally climb ladders, ropes or scaffolds. She could perform other work-related activities either frequently or within normal limits. In reaching this conclusion, the ALJ rejected the contrary opinion of plaintiff's treating physician, Dr. Kistler, because his treatment notes reflected only very conservative, periodic treatment, the objective findings to support his opinion were "minimal," and the inconsistency between his treatment notes and treatment episodes and the severe nature of the limitations imposed made the latter somewhat suspect. Rather, the ALJ credited the opinion of Dr. Woskobnick which he viewed as fairly consistent with the abilities needed to do plaintiff's past work. He discounted plaintiff's contrary testimony because it was vague, incomplete, and inconsistent, and her activity level exceeded her claimed limitations.

The ALJ then credited the vocational expert's testimony that, if plaintiff were limited as described by Dr. Woskobnick, she could still perform the office helper job. Based on that testimony, he determined that plaintiff had not shown the inability to perform her past work at any time prior to the expiration of her insured status. Consequently, he denied her claim for benefits.

### VI. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, plaintiff raises a single issue, although it has two subparts. She argues that the ALJ did not afford the correct weight to the opinion of her treating physician, Dr. Kistler, and that he also misconstrued the opinion of Dr. Woskobnick. These contentions are reviewed to determine if the ALJ's decision conformed with applicable law and

whether it survives review under the familiar "substantial evidence" standard.

    <u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be   conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984);<u> Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

    The first part of plaintiff's argument contests the ALJ refusal to accord "great weight" – or, in this case, controlling weight – to Dr. Kistler's appraisal of plaintiff's residual functional capacity.  He apparently did believe she could do the lifting needed for light work, but thought her incapable of either standing or sitting long enough to get through a workday.

Obviously, the other two doctors who expressed opinions on this subject disagreed, but they were not treating physicians, and one of them never examined the plaintiff.

Under Social Security regulations, see 20 C.F.R. 404.1527, a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, the weight given to that opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §404.1527; Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985). In evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). It is also necessary that the Commissioner explain in sufficient detail why a treating physician's opinion is being rejected or discounted so that the reviewing court may understand the Commissioner's reasoning process and the claimant can appreciate why his or her doctor's opinion has not convinced the Commissioner that the claimant is disabled. See Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007).

Here, plaintiff argues that the ALJ did not comply with §404.1527(d)(2) because he did provide a "supported explanation as to why the reports and conclusions of Dr. Kistler ... were not

-7-

adopted or granted deference ... with regard to the severity of her impairments." Plaintiff's Statement of Errors, Doc. #14, at 12. She points out that she saw Dr. Kistler on ten occasions between 2002 and 2007 and that the length and extent of his treatment history was not properly taken into account. She also cites to a 1999 x-ray as objective support for his opinion, but, as the Commissioner's opposing memorandum points out, that record was submitted only to the Appeals Council and is not properly a part of this discussion. Finally, she notes the consistency between Dr. Kistler's and Dr. Woskobnick's opinions at least as to the diagnoses, and she argues that the 15-minute per hour "rest" restriction imposed by Dr. Woskobnick is also consistent with Dr. Kistler's report.

It is true that the ALJ's statement of the reasons he did not fully accept Dr. Kistler's opinion is brief. However, there is no minimum length for such a statement. Rather, to comply with the standard set forth in the <u>Rogers</u> case, the statement of reasons must be understandable, and must refer to factors which the ALJ may legitimately take into account. Here, the ALJ did cite to several permissible considerations, including the lack of significant diagnostic testing - which is correct, given that the 1999 x-ray was not part of the administrative record considered by the ALJ - and the infrequency of treatment. Although plaintiff's inability to afford treatment may explain the fact that she saw Dr. Kistler, on average, only twice a year between 2002 and 2007, the fact remains that he based his diagnosis on relatively few office visits and little objective testing. By contrast, the tests administered by Dr. Woskobnick produced mostly normal results. Under these circumstances, the ALJ was permitted to find that plaintiff was not as limited as Dr. Kistler described, especially because his limitations described someone who could not maintain a posture other than lying down

for at least half a workday, and plaintiff herself did not testify to such severe limitations.

The other part of plaintiff's statement of error has to do with Dr. Woskobnick's opinion. Plaintiff argues that the ALJ's interpretation of the rest periods described in his report is incorrect. Under the standard of review applicable here, however, the Court can reject that interpretation only if it not one that a reasonable person could have adopted.

Certainly, the way that Dr. Woskobnick expressed his opinion could have been more clear. He did not explicitly explain what he meant by the fact that if plaintiff were standing or walking, she would need to rest for fifteen minutes each hour in order to be able to stand or walk for a full eight hours in a workday. However, he did not say that during the rest period she would be unable to do anything at all. Ordinarily, someone takes a rest from standing or walking by sitting down. Further, the vocational expert, who presumably has experience interpreting such residual functional capacity assessments, believed that if plaintiff were limited as described by Dr. Woskobnick, she would be able to do her past job. Finally, the ALJ actually adopted the residual functional capacity of Dr. Hinzman rather than the opinion of Dr. Woskobnick, and simply observed that Dr. Woskobnick's view was relatively consistent with Dr. Hinzman's, an observation that a reasonable person could well have made. Under these circumstances, the Commissioner did not err in the way in which Dr. Woskobnick's opinion was interpreted.

## VII.  Recommended Decision

For all of the reasons stated above, it is recommended that the plaintiff's statement of specific errors (Doc. #14) be overruled and that the Court enter judgment in favor of the defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge